UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **April M. Davis, Trustee for the Heirs and Next of Kin of Gilbert Pineda,** | **Court File No.** |
| Plaintiff, | |
| vs. | |
| Mower County; | **COMPLAINT WITH JURY DEMAND** |
| Advanced Correctional Healthcare, Inc.; | |
| USA Medical & Psychological Staffing, S.C.; | |
| Mayo Clinic;<br>Mayo Clinic Hospital – Rochester;<br>Mayo Clinic – Methodist Hospital; | |
| Corrections Sergeant Joseph McElroy,<br>Corrections Deputy Madison Colstrup,<br>Corrections Deputy Nallely Vazquez-Perez,<br>Corrections Deputy MM613 (whose true name is presently unknown),<br>Corrections Deputy KR629 (whose true name is presently unknown),<br>Corrections Deputy RH637 (whose true name is presently unknown), and<br>Corrections Deputy CK642 (whose true name is presently unknown),<br>Mower County employees, all in their individual and official capacities and as agents/employees of Mower County; | |
| Kevin Gene Echols, RN, Michelle Marie Quale, RN, CNM, CNP, Heidi Lee Brown, RN, CNP, and Nurse J. Doe (whose true name is presently unknown), all in their individual and official capacities and as agents/employees of Advanced Correctional Healthcare, Inc. and/or USA Medical & Psychological Staffing, S.C.; and | |

1

**Ross A. Avant, MD, Tal D. Cohen, MD,
Matthew K. Tollefson, MD, and J. Does 1-10
(whose true names are presently unknown),
individually and as agents/employees of
Mayo Clinic and/or Mayo Clinic Hospital –
Rochester and/or Mayo Clinic – Methodist
Hospital,**

        **Defendants.**

## INTRODUCTION

For her Complaint, April M. Davis, in her capacity as Trustee for the heirs and next of kin of Gilbert Pineda, states and alleges as follows:

1. This is an action for money damages arising out of the March 5, 2022 in-custody death of Gilbert Pineda ("Mr. Pineda"), which resulted from violations of well-settled federal civil rights and state law.

2. By order dated August 2, 2024, Mower County District Court appointed April M. Davis ("Plaintiff") as Trustee for the Heirs and Next of Kin of Gilbert Pineda.

3. It is alleged that the individual Defendants violated Mr. Pineda's constitutional rights under 42 U.S.C. §§ 1983 and 1988, and the Eighth and/or Fourteenth Amendments to the United States Constitution and engaged in negligence and medical malpractice leading to wrongful death.

## JURISDICTION

4. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

2

## VENUE

5. This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

## PARTIES

6. Decedent Gilbert Pineda was at all material times a resident of the State of Minnesota and of full age and an inmate in the Mower County Jail.

7. Plaintiff April M. Davis has been appointed as Trustee for the heirs and next of kin of Gilbert Pineda pursuant to Minn. Stat. § 573.02.

8. Defendant Mower County is a municipal corporation and the public employer of all individually named County-employed Defendants. Defendant Mower County is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials.

9. Defendant Advanced Correctional Healthcare, Inc. ("ACH") is a corporate entity that, at all material times, was contracted by Mower County to provide medical services for Mower County Jail inmates under the color of state law. Defendant ACH, at all material times, employed Defendants Echols, Quale, Brown, and Nurse J. Doe.

10. Defendant USA Medical & Psychological Staffing, S.C., is a corporate entity that, at all material times, was contracted by Mower County to provide medical services for Mower County Jail inmates under the color of state law. Defendant USA Medical & Psychological Staffing, at all material times, employed Defendants Echols, Quale, Brown, and Nurse J. Doe.

11. Defendant Mayo Clinic is a Minnesota nonprofit corporation that employs Defendants Avant, Cohen, Tollefson, and J. Does 1-10, and operates the hospital in which Mr. Pineda received surgery and post-operative medical care for his kidney lesion.

12. Mayo Clinic Hospital – Rochester is a Minnesota nonprofit corporation that employs Defendants Avant, Cohen, Tollefson, and J. Does 1-10, and operates the hospital in which Mr. Pineda received surgery and post-operative medical care for his kidney lesion.

13. Mayo Clinic – Methodist Hospital is a Minnesota assumed name entity that employs Defendants Avant, Cohen, Tollefson, and J. Does 1-10, and operates the hospital in which Mr. Pineda received surgery and post-operative medical care for his kidney lesion.

14. Defendants Joseph McElroy, Madison Colstrup, Nallely Vazquez-Perez, MM612 (whose true name is presently unknown), KR629 (whose true name is presently unknown), RH637 (whose true name is presently unknown), and CK642 (whose true name is presently unknown), all sued in their individual, official, and employee/agent capacities, were at all times relevant to this complaint duly appointed and acting officials/employees of Defendant Mower County, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or Mower County. These Defendants may be referred to below as "individual Mower County Defendants."

15. Defendants Kevin Gene Echols, RN ("Nurse Echols"), Michelle Marie Quale, RN, CNM, CNP ("Nurse Practitioner Quale"), Heidi Lee Brown, RN, CNP ("Nurse Practitioner Brown"), and Nurse J. Doe ("Nurse Doe" whose true name is presently unknown), all sued in their individual, official, and employee/agent capacities, were at all material times employed by Advanced Correctional Healthcare, Inc. and/or USA Medical & Psychological Staffing, S.C., were assigned to provide medical care and services to inmates at Mower County Jail,

including Mr. Pineda, and were acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota, and/or Mower County. These Defendants may be referred to below as "individual ACH/USA Medical Defendants."

16. Defendants Ross A. Avant, MD ("Dr. Avant"), Tal D. Cohen, MD ("Dr. Cohen"), Matthew K. Tollefson, MD ("Dr. Tollefson"), and J. Does 1-10, all sued in their individual and employee/agent capacities, were at all material times employed and/or contracted by Mayo Clinic and/or Mayo Clinic Hospital – Rochester and/or Mayo Clinic – Methodist Hospital, and were assigned to provide surgery and post-operative medical care to Mr. Pineda for his kidney lesion and radical nephrectomy. These Defendants may be referred to below as "individual Mayo Defendants."

## FACTS

17. In early 2022, the Decedent, Mr. Pineda, was in Mower County Jail awaiting trial. He was diagnosed with a cancerous mass on his kidney in December 2021. He was also being treated for insulin-dependent diabetes mellitus.

18. On February 28, 2022, Mr. Pineda was admitted to Mayo Clinic-Methodist Hospital for a radical nephrectomy (kidney removal). He was hospitalized until March 3, 2022 when he was discharged back to the jail.

19. On his admission at Mayo on February 28, 2022, Mr. Pineda was slightly anemic, with a hemoglobin (level of iron in his red blood cells) of 12.7. The normal range for males is 13.2 to 16.6.[1]

---

[1] https://www.mayoclinic.org/tests-procedures/hemoglobin-test/about/pac-20385075

20. During his post-operative care from March 1, 2022 through his discharge on March 3, 2022, Mr. Pineda's hemoglobin continued to decline from 10.9 and later 9.6 on March 1 to 9.3 shortly after midnight on March 2, 2022. Hemoglobin is the substance on red blood cells that carries oxygen throughout the body. In addition, Mr. Pineda's red blood cell count declined from 3.9 and 3.4 on March 1 to 3.3 on March 2. Red blood cell counts indicate the number of red blood cells in the blood. Normal values for men range from 4.35 to 5.65.[2] Declining hemoglobin and red blood cell counts are serious indicators of possible internal bleeding, especially after a major surgery. During that same period, Mr. Pineda's pulse was rapid, a sign that his body was attempting to compensate for the decreased red blood cells and hemoglobin. Despite these serious indicators, Defendants Dr. Avant, Dr. Cohen, Dr. Tollefson and J. Does 1-10 breached the standard of care for a post-operative patient after major surgery by failing to retest Mr. Pineda on March 2 and March 3, 2022, and by failing to address the cause of his declining hemoglobin and red blood cell count along with rapid pulse before discharging him back to the jail on March 3, 2022. Mr. Pineda's declining hemoglobin, declining red blood cell count, and increased pulse, combined with the surgery completed just days prior, were a major red flag that Mr. Pineda was suffering serious internal bleeding. Defendants Dr. Avant, Dr. Cohen, Dr. Dr. Tollefson and J. Does 1-10 breached the post-operative standard of care by failing to retest Mr. Pineda's hemoglobin and red blood cell count on March 2 and March 3, and by prematurely discharging him back to the jail on March 3.

21. Once Mr. Pineda was returned to the jail, he was placed in a medical cell to avoid the risk of infection after his major abdominal surgery. This cell had a camera within the cell to allow his movements and condition to be monitored.

---

[2] https://www.mayoclinic.org/tests-procedures/complete-blood-count/about/pac-20384919

22. Approximately 44 minutes after returning to the jail, Mr. Pineda received a visit from Defendant Kevin Echols, RN. Nurse Echols remained in the cell with Mr. Pineda for approximately 8 minutes. Nurse Echols stated in his narrative progress note of March 3, 2022, that he reviewed discharge instructions with Mr. Pineda and performed a wound check. Video of that visit as well as the Nurse Echols' own notes make it clear he did not measure Mr. Pineda's vital signs.

23. On that same date, Nurse Echols wrote a note on the Mayo discharge instructions listing new medication orders from the hospital with the notation "t.o. M. Quale." The abbreviation "t.o." in that notation refers to "telephone order." Upon information and belief, M. Quale refers to Defendant Michelle Marie Quale, RN, CNM, CNP.

24. On that same date, JJ #615, a corrections officer, wrote a note on another set of discharge orders listing additional medications with the notation "when doctor Heidi Brown was called to let her know." Upon information and belief, this notation refers to Defendant Heidi Lee Brown, RN, CNP.

25. The standard of care for an individual who was readmitted to the jail after experiencing major surgery would consist of performing an initial evaluation and physical examination to establish the patient's baseline along with developing a care plan that incorporates new medical orders along with monitoring for signs of infection through wound checks and at least daily vital signs measurement as well as assessing and managing the patient's pain. Mr. Pineda was especially susceptible to infection due to his diabetes.[3] Further, since kidneys

---

[3] Casqueiro J, Casqueiro J, Alves C. Infections in patients with diabetes mellitus: A review of pathogenesis. https://pmc.ncbi.nlm.nih.gov/articles/PMC3354930/

play a key role in blood pressure regulation,[4] monitoring the patient's blood pressure at least daily during recovery is essential.  Finally, since one of Mr. Pineda's kidneys was removed, measuring his fluid intake and output should have been a part of a care plan for him.

26. Although Defendants Echols, Brown, Quale, and Nurse J. Doe were all made aware on March 3 that Mr. Pineda had just returned to the jail from the hospital after major surgery, they failed to perform an initial evaluation or physical examination to establish Mr. Pineda's baseline.  They also failed to establish a medical care plan for Mr. Pineda and they did not instruct jail staff as to how to care for Mr. Pineda or what symptoms may require emergency medical care.

27. In addition, Mr. Pineda's Mayo physician directed that Mr. Pineda be placed into a "skilled nursing facility, psychiatric facility, acute rehab facility, or swing-bed hospital on an inpatient basis . . . for an ongoing condition for which the individual received inpatient hospital care." Defendants Echols, Brown, Quale, and Nurse J. Doe either failed to obtain and read Mr. Pineda's medical records from Mayo or, even worse, they read and intentionally disregarded this medical directive.

28. On March 4, 2022, although jail records show that Nurse J. Doe was present in the facility, no health care providers saw Mr. Pineda at all.  Instead, Corrections officers were tasked with checking and interpreting the results of Mr. Pineda's blood glucose levels and administering his medications, including drawing up insulin from vials, tasks that are inappropriate for individuals without medical training.  Mr. Pineda's vital signs were not measured even once and his wound was not checked that day.

---

[4] Ito, Sadayoshi. S-27-1: The Role of Kidney in Blood Pressure Regulation. January 2023. https://journals.lww.com/jhypertension/abstract/2023/01001/s_27_1__the_role_of_kidney_in_blood_pressure.143.aspx

29. Mr. Pineda's discharge instructions from Mayo direct that Mr. Pineda was to "Seek Emergency Treatment" if he developed "Inability to urinate." Upon information and belief, Mr. Pineda did develop difficulty and/or inability to urinate on March 4, 2022, but Defendants Echols, Brown, Quale, and Nurse J. Doe abandoned Mr. Pineda for that entire day and, as a result, no one was monitoring Mr. Pineda's urinary function.

30. Throughout the day of March 4, 2022, Mr. Pineda raised his shirt, showed his surgical wound to Corrections Deputies MM613, KR629, RH637, and CK642 and, upon information and belief, complained about pain. Mr. Pineda also wrote a text to his family at 3:49 pm that day stating "Som i wshed i could send you guys a pic anyways you remember my other cut for my spine well it twice as long and i hurt. Really.  Bad." Yet none of the corrections deputies who worked with Mr. Pineda that day requested medical care for Mr. Pineda.

31. By the early morning of March 5, 2022, it was apparent that Mr. Pineda was acutely ill. At approximately 6:00 am, Defendant Sgt. McElroy entered Mr. Pineda's cell to administer medications. Mr. Pineda was unable to sit on his own and Sgt. McElroy had to pull him into a sitting position. Mr. Pineda showed Sgt. McElroy his surgical wound, then toppled to his side.

32. Video then shows Sgt. McElroy briefly leaving Mr. Pineda's cell and returning with medications. He pulled Mr. Pineda back into a sitting position. As Sgt. McElroy handed Mr. Pineda his medications, Mr. Pineda dropped the pills. Sgt. McElroy retrieved pills from the floor and placed them into Mr. Pineda's hands one or two at a time. Even then, Mr. Pineda fell to the side again and Sgt. McElroy had to help him sit up. Eventually, Mr. Pineda took all of his medications and Sgt. McElroy left his cell.

33. At approximately 6:10 am that morning, Sgt. McElroy returned to Mr. Pineda's cell and pulled him into a sitting position so that his blood glucose could be tested. Mr. Pineda sat with his head slumping forward. Sgt. McElroy left and returned two more times to draw up and help Mr. Pineda self-administer insulin. Sgt. McElroy left and Mr. Pineda slumped to his side on his bunk but was unable to pull his legs onto the bunk.

34. Sgt. McElroy noted in his report that Mr. Pineda was talking to himself when he exited his cell. Sgt. McElroy also knew at that time that Mr. Pinda had been in the hospital for major surgery just days prior, that Mr. Pineda had an enormous surgical wound running from his chest to the bottom of his abdomen, that Mr. Pineda had not seen any medical staff since March 3, and that Ms. Pineda was extremely ill, unable pull himself into a sitting position, unable to sit up, extremely weak, and unable to hold his medications. Despite Mr. Pineda's obviously deteriorating condition, Sgt. McElroy made no effort to obtain medical care for Mr. Pineda.

35. At 6:41 am, Sgt. McElroy brought Mr. Pineda's breakfast tray into his cell. He found Mr. Pineda unresponsive. Sgt. McElroy attempted to rouse Mr. Pineda and checked his pulse. He states in his report that he detected slight chest rise and a weak pulse. Sgt. McElroy called for assistance and an ambulance was called. However, it appears that the jail did not have an automated external defibrillator (AED) as no one brought one. AEDs treat cardiac arrest.

36. After several minutes, Defendants Sgt. McElroy and Deputies Colstrup and Vazquez-Perez took turns performing cardiopulmonary resuscitation (CPR). However, they performed CPR on Mr. Pineda's bunk, which rendered it ineffective. Corrections officers receive

professional-level CPR training and would have been directed, through training, that performing CPR on top of two mattresses on a bunk is improper and ineffective.

37. Paramedics arrived at 6:53 am and took over care for Mr. Pineda including pulling him to the floor before establishing an airway and initiating automated CPR.

38. Mr. Pineda was initially taken by ambulance to the Mayo Clinic Hospital in Austin, Minnesota and then airlifted to Mayo Clinic Hospital St. Mary's in Rochester where he received multiple transfusions and emergency surgery was performed. Despite these efforts, Mr. Pineda died.

39. On autopsy, Mr. Pineda was found to have sustained "left-sided retroperitoneal soft tissue hemorrhage, extensive." This is a hemorrhage with extensive blood loss in the area where his left kidney was removed during the surgery.  He also had blood and tissue death in other areas of his abdomen as a result of blood loss from hemorrhaging.

40. Had the individual Mayo Defendants properly monitored Mr. Pineda's hemoglobin, red blood cell count, and pulse and addressed the underlying cause of the abnormalities, Mr. Pineda would have remained in the hospital where his hemorrhage would have been detected and treated and he would have survived.

41. Had the individual ACH/USA Medical Defendants performed an appropriate evaluation of Mr. Pineda, prepared a care plan for him, seen him on March 4, 2022 to monitor his vital signs and condition, and notified corrections staff of the emergent symptoms to watch for, Mr. Pineda would have been taken to the emergency room on March 4, 2022 where his deteriorating condition would have been diagnosed and treated and he would have survived.

42. Had individual Mower County Defendants acted on Mr. Pineda's obviously worsening condition on March 4 and 5, 2022 by requesting prompt medical care and had they performed CPR properly on March 5, Mr. Pineda would have survived.

43. As a direct and proximate result of Defendants' actions, Mr. Pineda's medical needs were neglected and/or left in the hands of corrections officers with no medical training. As a direct and proximate result of Defendants' actions, Mr. Pineda suffered wrongful death and his heirs and next of kin suffered damages enumerated in Minn. Stat. § 573.02, in an amount in excess of $75,000.

### CLAIMS FOR RELIEF

**COUNT 1: 42 U.S.C. § 1983 – EIGHTH AND/OR FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE VIOLATIONS AGAINST DEFENDANTS MCELROY, COLSTRUP, VAZQUEZ-PEREZ, MM612, KR629, RH637, CK642, ECHOLS, QUALE, BROWN, AND NURSE J. DOE IN THEIR INDIVIDUAL CAPACITIES**

44. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

45. Based on the above factual allegations, Defendants, through their actions, acting under the color of state law, violated Mr. Pineda's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution through their deliberate indifference towards Mr. Pineda's serious medical needs and the serious risk of injury/death to Mr. Pineda.

46. Specifically, Defendants Sgt. McElroy, MM613, KR629, RH637, and CK642 failed in their duty to recognize and request medical care for Mr. Pineda's increasing pain and obviously deteriorating condition before Mr. Pineda became unresponsive.

47. Defendants McElroy, Colstrup, and Vazquez-Perez had a duty and standard of care to provide CPR in an effective manner by moving Mr. Pineda to the floor and positioning

themselves such that they could correctly compress Mr. Pineda's chest and open his airway. Defendants McElroy, Colstrup, and Vazquez-Perez knowingly administered ineffective CPR to Mr. Pineda when they had reason to know that he was unresponsive and at substantial risk of death.

48. Defendants Echols, Quale, Brown, and Nurse J. Doe all learned, on March 3, 2022, that Mr. Pineda had just returned from Mayo after major surgery and was in need post-surgical medical care. These Defendants ignored Mayo's directive to place Mr. Pineda into a nursing care facility and instead left him at the jail with no medical care at all. No medical care plan was created for Mr. Pineda, and his vital signs were not measured even once after he returned to the jail on March 3. Defendants Echols, Quale, Brown, and Nurse J. Doe provided no instructions to jail staff as to how to care for Mr. Pineda, and they completely abandoned Mr. Pineda for the entire day on March 4. Defendants Echols, Quale, Brown, and Nurse J. Doe failed to monitor Mr. Pineda's vital signs, failed to monitor his blood glucose levels, failed to provide wound care, and failed to monitor his kidney function even though Mr. Pineda's kidney had been removed just days prior.

49. As a result of these constitutional violations, Mr. Pineda and his heirs and next of kin suffered damages as aforesaid.

**COUNT 2: 42 U.S.C. § 1983 – EIGHTH AND/OR FOURTEENTH AMENDMENT (*MONELL*) VIOLATIONS AGAINST DEFENDANTS MOWER COUNTY, ADVANCED CORRECTIONAL HEALTHCARE, INC., USA MEDICAL & PSYCHOLOGICAL STAFFING, S.C., AND THE INDIVIDUAL MOWER COUNTY, ACH, AND USA MEDICAL & PSYCHOLOGICAL STAFFING, S.C., DEFENDANTS IN THEIR OFFICIAL CAPACITIES**

50. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

51. Prior to March 5, 2022, Defendants developed and maintained policies and/or customs and/or practices exhibiting deliberate indifference to the constitutional rights of persons in their care and custody, which caused the violations of Mr. Pineda's constitutional rights.

52. It was the policy and/or custom and/or practice of Defendants to inadequately supervise and train their employees, including the individual Defendants, thereby failing to adequately prevent and discourage further constitutional violations.

53. It was the policy and/or custom and/or practice of Defendants to fail to provide adequate medical care to inmates, including those who had recently undergone major surgeries.

54. It was the policy and/or custom and/or practice of Defendants to direct corrections staff to engage in medical tasks for which they were not qualified and not properly trained. These tasks include seeking and recording telephone orders, performing blood glucose testing and interpreting the results, calculating insulin doses and drawing up injectable medications.

55. It was the policy and/or custom and/or practice of Defendants not to provide an AED in the facility despite being responsible for the wellbeing of up to 88 adults.[5]

56. It was the policy and/or custom and/or practice of Defendants to maintain inadequate supervision of medically fragile inmates at the Mower County Jail, thereby directly causing and contributing to constitutional violations.

---

[5] Facility Inspection Report Issued by the Minnesota Department of Corrections Pursuant to MN Statute 241.021, Subdivision 1. https://mn.gov/doc/assets/Mower%20County%20Jail%202023_tcm1089-605928.pdf

57. As a result of these policies and/or customs and/or practices and/or lack of training, employees of Defendants, including the individual Mower County and ACH/USA Medical Defendants named herein, believed that their actions would not be properly monitored by supervisory employees and that misconduct would not be investigated or sanctioned, but would be tolerated.

58. As a result of these policies and/or customs and/or practices and/or lack of training, employees of Defendants, including the individual Mower County and ACH/USA Medical Defendants named herein, were not properly equipped to care for medically fragile inmates.

59. These policies and/or customs and/or practices and/or lack of training and supervision were the cause of the violations of Mr. Pineda's constitutional rights alleged herein.

**COUNT 3: MINN. STAT. § 573.02 – WRONGFUL DEATH CLAIM AGAINST MOWER COUNTY AND DEFENDANTS MCELROY, COLSTRUP, VAZQUEZ-PEREZ, MM612, KR629, RH637, AND CK642**

60. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

61. Based on the above factual allegations, Defendants negligently caused Mr. Pineda's death. Specifically, Defendants owed Mr. Pineda a duty and standard of care to recognize and call for medical care as Mr. Pineda's condition deteriorated. Defendants breached and departed from these duties and standards of care.

62. Defendants McElroy, Colstrup and Vazquez-Perez also had a duty to perform CPR correctly. Defendants breached and departed from these duties and standards of care.

63. Defendants caused Mr. Pineda's wrongful death through their deliberate indifference towards his serious medical needs (as alleged in Counts 1 and 2 above) and/or negligence (as alleged in the preceding paragraph).

64. Defendant Mower County is vicariously liable for the wrongful death caused by its employees/agents, the individual Mower County Defendants.

65. As a direct and proximate result of Mr. Pineda's wrongful death, Mr. Pineda's heirs and next of kin have suffered damages enumerated in Minn. Stat. § 573.02, in an amount in excess of $75,000.

### COUNT 4: MINN. STAT. § 573.02 – WRONGFUL DEATH CLAIM AGAINST ACH, USA MEDICAL & PSYCHOLOGICAL SERVICES, S.C., AND DEFENDANTS ECHOLS, QUALE, BROWN, AND NURSE J. DOE

66. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

67. Based on the above factual allegations, Defendants have committed medical malpractice against Mr. Pineda. Specifically, Defendants owed Mr. Pineda a duty and standard of care, as recognized by the medical community, to follow the medical directives in his medical records/discharge instructions from Mayo, complete a physical examination and evaluation upon his return to Mower County Jail, develop a medical care plan upon his return to Mower County Jail, to monitor Mr. Pineda's vital signs, blood sugar levels, wound healing, and kidney/urinary function, and to provide instructions to jail staff regarding monitoring Mr. Pineda and his symptoms. Defendants failed to carry out any of these tasks and abandoned Mr. Pineda for the entire day on March 4, 2022.

68. Defendants caused Mr. Pineda's wrongful death through deliberate indifference to his serious medical needs (as alleged in Counts 1 and 2 above) and/or medical malpractice (as alleged in the preceding paragraph).

69. Defendants Advanced Correctional Healthcare, Inc. and USA Medical and Psychological Services, S.C., are vicariously liable for the wrongful death caused by their employees/agents, the individual ACH/USA Medical Defendants.

70. As a direct and proximate result of Mr. Pineda's wrongful death, Mr. Pineda's heirs and next of kin have suffered damages enumerated in Minn. Stat. § 573.02, in an amount in excess of $75,000.

### COUNT 5: MINN. STAT. § 573.02 – WRONGFUL DEATH CLAIM AGAINST MAYO CLINIC, MAYO CLINIC HOSPITAL-ROCHESTER, MAYO CLINIC-METHODIST HOSPITAL, AND DEFENDANTS AVANT, COHEN, TOLLEFSON, AND J. DOES 1-10

71. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

72. Based on the above factual allegations, Defendants have committed medical malpractice against Mr. Pineda. Specifically, Defendants owed Mr. Pineda a duty and standard of care, as recognized by the medical community, to provide appropriate post-operative care and ensure his condition was stable before discharging him from the hospital. Defendants breached this standard of care by failing to retest and appropriately monitor Mr. Pineda's hemoglobin and red blood cell count along with rapid pulse prior to discharge, failing to recognize that Mr. Pineda was experiencing internal bleeding, and prematurely discharging Mr. Pineda to Mower County Jail.

73. Defendants caused Mr. Pineda's wrongful death through medical malpractice (as alleged in the preceding paragraph).

74. Defendants Mayo Clinic, Mayo Clinic Hospital-Rochester, and Mayo Clinic-Methodist Hospital are vicariously liable for the wrongful death caused by their employees/agents, the individual Mayo Defendants.

75. As a direct and proximate result of Mr. Pineda's wrongful death, Mr. Pineda's heirs and next of kin have suffered damages enumerated in Minn. Stat. § 573.02, in an amount in excess of $75,000.

**COUNT 6: MINN. STAT. § 573.01-573.02 – SURVIVAL ACTION AGAINST ALL DEFENDANTS**

76. Paragraphs 1 through 43 are incorporated herein by reference as though fully set forth.

77. Based on the above factual allegations, Defendants have committed negligence, medical malpractice, and deliberate indifference against Mr. Pineda, which caused and resulted in his wrongful death.

78. Defendants caused Mr. Pineda to suffer pre-death physical/emotional pain and suffering, wrongful death, and loss of life and related damages.

79. Defendant Mower County is vicariously liable for the wrongful death caused by its employees/agents, the individual Mower County Defendants.

80. Defendants Advanced Correctional Healthcare, Inc. and USA Medical and Psychological Services, S.C., are vicariously liable for the wrongful death caused by their employees/agents, the individual ACH/USA Medical Defendants.

81. Defendants Mayo Clinic, Mayo Clinic Hospital-Rochester, and Mayo Clinic-Methodist Hospital are vicariously liable for the wrongful death caused by their employees/agents, the individual Mayo Defendants.

82. Notice is hereby given that Plaintiff intends to seek and recover all damages to the extent permitted under Minnesota state law, including, without limitation, pre-death pain and suffering damages as well as all other "damages suffered by [Mr. Pineda] . . . prior to [his] death." *See* Minn. Stat. § 573.02, subd. 1.

**RELIEF REQUESTED**

**WHEREFORE, Plaintiff requests that this Court grant the following relief:**

a. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Mr. Pineda's constitutional rights under the Eighth/Fourteenth Amendments to the

United States Constitution and that Defendants are liable to Plaintiff for all damages resulting from these violations, including damages for Mr. Pineda's conscious pain and suffering and loss of life and related damages;

b. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants caused Mr. Pineda's wrongful death and that Defendants are liable to Plaintiff for all damages resulting from these violations including, without limitation, pecuniary loss suffered by the next of kin, Mr. Pineda's pre-death pain and suffering damages, and all other "damages suffered by [Mr. Pineda] . . . prior to [his] death." *See* Minn. Stat. § 573.02, subd. 1;

c. Award of compensatory damages to Plaintiff against all Defendants, jointly and severally;

d. Award of punitive damages to Plaintiff against all Defendants, jointly and severally;

e. Award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 1988;

f. Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: March 3, 2025

By: s/ Zorislav R. Leyderman
ZORISLAV R. LEYDERMAN
Attorney License No. 0391286
Attorney for Plaintiff
The Law Office of Zorislav R. Leyderman
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (612) 876-6626
Email: zrl@ZRLlaw.com